Loring, J.,
delivered the opinion of the court:
The original action in this case was brought under a Joint Resolution of Congress, referring the case here, dated the 4th day of May, 1870, and entitled “ Joint Resolution to enable the Court of Claims to hear and determine the claim of IS. Dielcelman, a subject of the King of Prussia.”
The claim was for damages against the United States for the detention, by their military authorities, of the petitioner’s vessel, in the port of New Orleans, by which ho incurred a loss of freight, delay, and consequent expenses. And on the trial *321 here, the majority of this court held, first, that the petitioner was entitled to judgment under the treaty with Prussia; second, that he was entitled to recover under the law of nations for a tort.
From this judgment, adverse to the United States, they, by their Attorney-General, made application for, and gave notice ■of, an appeal to the Supreme Court — the amount in controversy exceeding $3,000.
On the hearing of that motion here the learned counsel for the claimant objected that the United States were not entitled to an appeal, and in support of his objection cited the case “ Ex parte the United States, petitioner, v. Atocha’s Administratrix,” (p. 38, ante,) in which the Supreme Court, at their last October term, decided that the United States were not entitled to an appeal from a judgment rendered against them here on a claim under the treaty with Mexico, referred here by a private act of Congress.
As the language of the Supreme Court, in its opinion in that case, when taken literally and apart from its context, supports the objection made, and as the decision of the motion before •us requires a construction of the opinion of tjie Supreme Court, we state the reasons which we think belong to the subject and on which we rest our conclusion that the United States are entitled to an appeal in this case.
As appeals from here are limited to claims against the United States exceeding $3,000, our remarks are applicable only to ■ such claims. Under the act of 1855, establishing this court, it was not a judicial tribunal, for its findings of fact and law were referable to Congress, whose action upon them was according to its discretion, and not limited by rules of law or by statutes; and then an appeal from here, in any j udicial sens e of that word, was not predicable.
The act of 1863, reorganizing this court, made it a judicial tribunal, for it severed it from Congress, made its judgments final to an amount specified, and from all judgments on claims exceeding that amount gave a right of appeal to the Supreme Court to either party. .
But this right of appeal was applicable only to claims within •our general jurisdiction, as that was limited by the acts of 1855 and 1863; for our power “to hear and determine” claims at all was only under those acts; and by them a right of *322 appeal was granted to either party only in cases of claims founded on a law of Congress, or upon any regulation of an Executive Department, or upon a contract, express or implied,, and “ also all claims referred to us by either House of Congress,’7 and set-off, &c., by the Government against a claimant.
Under these statutes, if a claim were referred to us by either House of Congress, it would thereby have been within our general jurisdiction ; and that not by the reference to us, for that, being the action of one House of Congress only, could not confer jurisdiction, which can only be done by legislation, and the-only effect of the reference by either branch of the legislature would have been to place the claim so referred within one of the classes of cases subject to our general jurisdiction, and in the case of a claim so referred, either party would have a right of appeal under the act of 1863.
But where a claim is referred here by act of Congress or joint resolution.the rule is different. If the claim so referred to us is on any ground of action specified in the acts of 1855 and 1863, it would be, within our general jurisdiction, limited by those acts, and either party would have a right of appeal under the act of 1863. And in such case the act or joint resolution of Congress referring the claim here would have no effect on our jurisdiction, for that would have been plenary over the claim before.
But if the claim referred here by act or joint resolution of Congress were of such a nature as not to be within our general jurisdiction, as that is limited by the acts of 1855 and 1863, as, for instance, if it arose under a treaty or were for a tort, then our only jurisdiction over it would be that created by the act or joint resolution referring it here. And unless that act or joint resolution provided for an appeal by the petitioner, he would have no right of appeal from a judgment here against him.
But in a case of such a claim, so referred to us by an act or joint resolution of Congress, the United States would have a right of appeal from a judgment adverse to them by the Act 25th June, 1868, for that gives the United States a right of appeal from any final judgment here adverse to them, “whether such judgment shall have been rendered by virtue of the general or any special power or jurisdiction” of this court. And the words cited, viz, “ general or any special power or jurisdiction,” *323 ex vi termini, included every power or jurisdiction this court has or can have. Under this exposition the rules for appeals from here would seem to be—
1st. That from judgments here, on all claims within our general jurisdiction, as that is limited by the acts of 1855 and 1863, either party has a right of appeal.
2d. That the United States have a right of appeal from judgments adverse to them in all cases of claims against them.
3d. That a petitioner has no right of appeal from a judgment rendered here under any special power or jurisdiction, unless the act or joint resolution creating the special power or jurisdiction gives him a right of appeal.
In Dielcelman’s Case, as has been said, the majority of 'this court held, first, that he was entitled to judgment under the treaty with. Prussia; secondly, that he was entitled to recover under the law of nations, as for a tort.
But neither of these grounds of action was within our general jurisdiction, and all the jurisdiction we had or have over the case is by the joint resolution referring it here, and this joint resolution created for the claim a special power or jurisdiction here, under which we rendered the judgment adverse to the United States, which thus is within the terms of the Act June 25,1868, giving to the United States a right of appeal in all cases of judgments rendered against them on claims against them under ■“ special power or jurisdiction” of this court.
On the ground stated we hold that under the Act 25th June, 1868, the United States are entitled to an appeal on the motion before us.
And we think that this ruling does not conflict in any way with the decision of the Supreme Court in the case of the United States, petitioner, v. Alexander J. Atocha's Administratrix. Between that case and this there is a wide difference in the facts and jn the acts of reference, and the opinion of the Supreme Court recites the facts in that case and the peculiar terms of reference, and we think rests upon them.
My brethren who heard the motion by the United States for an appeal in Atocha’s Case ruled that the claim sued there was not a claim against the United States, and that therefore the case was not within the Act 2oth June, 1S68. This ruling was approved on appeal by the Supreme Court, who in their opin *324 ion said, in reference to the Act 25th June, 1868, as follows: ■“ Claims under treaty stipulations a,re not brought within it.n
If these words are to be taken literally, they would exclude from the act all claims against the United States under treaty -stipulations and bar the United States from a right of appeal from any judgment rendered against them on such claims, unless the special act referring the claim here gave the United States a right of appeal. But we think the words above quoted are not to be taken literally, but are to be considered applicable only to claims under teaty stipulations like that the Supreme • Court then had before them, and we think this is shown by the ' context.
Atocha was a naturalized citizen of the United States, resident in Mexico in 1845, and was expelled that country without judicial trial. By the Treaty of Guadalupe-Sidalgo, made between the United States and Mexico, February 2, 1848, the United States exonerated Mexico from specified claims of our citizens, and undertook to pay them, to a specified amount, from th at sum of money received from Mexico. Thus th e United States discharged Mexico absolutely from such claims, and assumed them to the amount received by them under the treaty. Atocha brought his claim before the commission appointed under the treaty, and it was rejected. He then, by petition, applied to Congress, and by a private act, of February 14,1865, the claim of Atocha was referred to this court, and in the act of reference it was described as a claim against Mexico, and this court was directed to find if the claim was- a just claim against the government of Mexico when the Treaty of Guadalupe-Hidalgo was executed ; and the payment of the claim was conditioned on that finding, and it was made payable out of the funds received from Mexico, and the amount of the recovery was limited to the balance of those funds remaining in the Treasury; and the act of reference made no provision for an appeal.
The Supreme Court, in its opinion, states the factthat Atocha’s claim was originally a claim against Mexico, and only assumed by the United States under treaty stipulations and the peculiar terms of the act referring it here; and after referring to the act of 1863, which removed from our jurisdiction claims arising under treaties, and in this respect was amendatory of the original *325 act of 1855 constituting this court, the Supreme Court said as follows:
“All the cases of which the Court [of Claims] could subsequently take cognizance, by either the original or amendatory act, were cases arising out of contracts or transactions between the Government or its officers and claimants, (and in their decision the Court [of Claims] was to be governed by those established rules of evidence which determine controversies between litigants in the ordinary tribunals of the country.) Those acts have since then applied only to claims made directly against the United States, and for the payment of which they were primarily liable, if liable at all, and not to claims against other governments, the payment of which the United States had assumed, or might assume, by treaty.”
“The Act 25th June, 18G8, while allowing appeals on behalf of the United States from all final judgments of the Court of Claims adverse to the United States, did not change the character of the claims of which this court could previously take cognizance;” and then the opinion of the Supreme Court, still referring to the Act 25th June, 1868, continued thus : “Claims under treaty stipulations are not brought within it, and when jurisdiction over such claims is conferred by special act, the authority of that court to hear and determine them, and of this court to revise its action is limited and controlled by the provisions of that act.”
Now it is manifest, from the first part of the opinion of the Supreme Court above cited and read, that it distinguishes be - tween claims arising “ on transactions between the Government or its officers and claimants” and “ claims made directly’against the United States, and for the payment of which they are primarily liable, if liable at all,” and those claims “ against other governments, the payment of which the United States had assumed, or might assume, by treaty.” And the opinion of the Supreme Court decides that in the former the United States have a right of appeal from judgment here against them, and that in the latter they have not. Now, the claim of Atocha’s administratrix was of the latter class, for it was primarily due from Mexico, and only assumed by the United States under treaty stipulations with her; while the claim of Diekelman is within the former class, for it was for the detention of his vessel by our military authorities in the port of New Orleans. It *326 arose, therefore, on transactions between the officers of our Government and the claimant, and it was made directly against the United States, and for it they were primarily liable, and nobody else was ever liable for it at all; for the only duty of the Prussian government to its subject was to enforce his claim against the United States; and in Diehelma^s Case the joint resolution referring the claim here describes the claim no otherwise than as “ the claim, of D. Dielcelman, a subject of the King of Prussia, and it intimates no liability for it at any time, other than the direct liability of the’United States, and it simply directs an award of damages, if any are found here, which could only be directly against the United States, and payable from their proper funds in the Treasury. And neither in the words of the joint resolution referring the claim here nor in the circumstances of the case is there anything to suggest any other liability for the claim at any time than the direct and sole liability of the United States.
For the reasons stated we think that this case of Diekelman is not within the decision of the Supreme Court in the case of Atocha’s administratrix, which we understand to have been, that the claim sued there was not within the Act 25th June, 1868, because it was nota claim against the United States, inasmuch as it was primarily due from Mexico, and only assumed by the United States under treaty stipulations.
And we do not understand that the Supreme Court decided that the Act 25th June, 1868, gives to the United States a right of appeal from judgments adverse to them only where the claim is within our general jurisdiction, as that is limited by the acts of 1855 and 1863; for that would be to erase from the Act 25th June, 1868, the words “any special power or jurisdiction,” which contain and express its whole purpose, which is, to give in cases not within our general jurisdiction a fuller measure of justice and a better protection to the United States than to claimants against them. And it is manifest that if the Act 25th June, 1868, were to be so construed as to confine its operation to claims within our general jurisdiction, then it would give to the United States no right of appeal which they had not before, and none which claimants have not also.
It certainly would be competent for Congress, in referring here by private act or joint resolution any claim against the United States, to give to the United States in such special act *327 ■a right of appeal from a judgment rendered under it against them. And it certainly was competent for Congress to do the same thing by a general act covering all such judgments; and we think that was the purpose and effect of the general Act 25th Time, 1868. Its subject is not jurisdiction, but- only the right of appeal by the United States, and it measures the extent of this by the words “general or any special power or jurisdiction.”
The remarks made have been applied to claims arising under treaty stipulations, but they are equally applicable to claims founded on torts. For as neither are within our general jurisdiction, both are within or without the operation of the Act 25th June, 1868, for the same reasons. And therefore the fact- that the judgment in Diehelmari’s Case was rested on a tort under the law of nations as well as on the treaty with Prussia requires no distinct consideration.
The ruling of the court is that the motion of the United States for an appeal be allowed.